Louis Clarence MORROW, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04-81-00092-CR.

Court of Appeals of Texas, San Antonio.

June 30, 1982.

**560**

James A. Kosub, San Antonio, for appellant.

Bill White, Dist. Atty., Alan E. Battaglia, Asst. Dist. Atty., San Antonio, for appellee.

Before ESQUIVEL, CANTU and BASKIN, JJ.

---

1. Contrary to appellant's assertion, the indictment charged appellant with burglary of a building under Tex.Penal Code Ann. § 30.-02(a)(1) (Vernon 1974), not under § 30.02(a)(3).

   § 30.02(a)(1) and (3) reads:

   (a) A person commits an offense if, without the effective consent of the owner, he:

OPINION

CANTU, Justice.

Review is sought from a conviction of burglary of a building. Trial was to a jury which set punishment at 18 years' confinement in the Texas Department of Corrections.

■ By his first ground of error, appellant contends the indictment is fundamentally defective because it fails to allege all the essential elements of burglary of a building under Tex.Penal Code Ann. § 30.-02(a)(3) (Vernon 1974).[1] The complaint focuses around the alleged failure of the indictment to contain a culpable mental state. Appellant insists the indictment should have alleged a knowing or intentional entry. *See* Tex.Penal Code Ann. § 6.02 (Vernon 1974).

The indictment in pertinent part recites that

> [O]n or about the 12th day of December, A.D., 1978, Louis Clarence Morrow, Jr. did then and there with intent to commit theft, enter a building which was not then open to the public, without the effective consent of George Harris, the owner, . . . .

Appellant places reliance upon *Ex parte Cranford*, 579 S.W.2d 934 (Tex.Cr.App.1979) which in turn relies upon *Ex parte Winton*, 549 S.W.2d 751 (Tex.Cr.App.1977). Both of these cases address fundamentally defective indictments under Tex.Penal Code Ann. § 30.02(a)(3) (Vernon 1974), alleging that the defendant in each case entered a building and *committed* theft therein, without alleging a culpable mental state. Reliance upon these cases is therefore misplaced.

In *Martinez v. State*, 565 S.W.2d 70 (Tex.Cr.App.1978), the exact contention now as-

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; . . . .

(3) enters a building or habitation and commits or attempts to commit a felony or theft.

serted by appellant was before the Court of Criminal Appeals. After distinguishing *Teniente v. State*, 533 S.W.2d 805 (Tex.Cr. App.1976), the Court held that the indictment sufficiently complied with the requisite of a culpable mental state by alleging that the entry was "with intent to commit theft." *See also Sylvester v. State*, 615 S.W.2d 734 (Tex.Cr.App.1981) and *Johnson v. State*, 537 S.W.2d 16 (Tex.Cr.App.1976). Appellant's first ground of error is overruled.

■ In his second ground of error, appellant challenges the sufficiency of the evidence to sustain the conviction for the offense of burglary of a building. The record reflects that San Antonio Police Officer Larry DeHaven was working on the south side of the city in plain clothes and driving an unmarked vehicle in the early morning hours of December 12, 1978. While DeHaven was stopped at a traffic light, two black males approached his vehicle and asked for the correct time. Officer DeHaven noticed one of the black males, later identified as appellant, to be wearing a Navy pea coat and an orange stocking cap. DeHaven also noticed the other black male to be wearing a blue jean jacket and a black hat.

After telling them the time, DeHaven drove up to a K. P.'s Coffee Shop located in the 900 block of S.W. Military Drive. A short time later, while seated by a window in the coffee shop, DeHaven observed two men jump out of a window of the Harris Western Wear Store located at 834 S.W. Military Drive, and begin running. One of the men was wearing a dark blue or black coat and an orange cap, while the other was wearing a blue jean coat with a black hat. Both were carrying bundles of clothing and, by the artificial lighting, DeHaven could see that they were dark skinned.

DeHaven returned to his car, broadcasted a call notifying of a burglary in action, and drove away in pursuit of the two men running south on Oppenheimer Street. As DeHaven turned on Oppenheimer Street, he was unable to see the fleeing men but he observed a Checker Cab taking off at a high rate of speed down an alley. DeHaven pursued the cab and was later joined by two marked police vehicles driven by officers Dale Hancock and Adrian Miller.

Following a brief chase, the cab was eventually stopped. Three persons were found in the cab: the driver, identified as Armando Gonzales, appellant, who was in the right front passenger seat, and Robert Bagley, who was hiding in the back seat area. When questioned, appellant identified himself as Louis Moore.

DeHaven identified appellant and Bagley as the same individuals who earlier had asked him for the time of day. He further stated that both resembled and were the same size as the two individuals he had seen jumping out of the window of the Harris Western Wear Store. DeHaven recognized in particular the clothing worn by appellant and Bagley as the same seen on the suspects fleeing the Harris Store.

A search of the cab produced several leather jackets still on coat hangers and covered with plastic. These jackets were recovered from the right front passenger side and from the rear floorboard. No explanation was ever given for the presence of these jackets in the cab. All three subjects were arrested and returned to the Harris Western Wear Store. DeHaven related that upon their return to the store, the burglar alarm was still ringing and a plate glass window was found broken. Earlier, when DeHaven had driven by the store, he had not noticed either a broken window or an alarm in operation.

Officer Miller's testimony corroborated DeHaven's concerning the pursuit of the cab, the arrest of the men and the recovery of the leather jackets. It was Miller who subsequently discovered appellant's true name to be Morrow instead of Moore. Miller also discovered a tire tool on the floorboard of the front passenger side of the cab and expressed the opinion that this tool could have been used to break the store window.

All of the leather jackets recovered from the cab had price tags on them bearing the

name of Harris Western Wear. They were subsequently identified by and returned to the store manager, Eleanor Winn. Officer Hancock's testimony was basically the same as Miller's and, in fact, essentially duplicated Miller's observations.

George Harris, the president and owner of Harris Western Wear, testified that he had given no one, including the apprehended persons, permission to enter his store and remove the jackets. He further stated that his store had not at that time been open to the public.

Eleanor Winn, the store manager, related how she had closed the store for the evening of December 11, 1978, at around 7:00 p.m. by locking the doors and activating the burglar alarm system. She further recalled seeing a rack full of leather jackets by the window when she left the store and described finding the rack empty when she reported to the store immediately after the burglary and apprehensions. She also noticed the broken window and the activated alarm system still going. Winn stated the opinion that the recovered jackets were taken from the rack later found to be empty. She denied giving anyone permission to enter and remove the jackets.

Appellant did not testify. Bagley, however, testified as a defense witness and admitted to participating in the burglary but insisted that appellant was not a participant. According to Bagley, he alone entered the store and took jackets. On cross-examination, the State elicited evidence that Bagley had plead guilty to the identical offense and had stipulated to appellant's participation as a co-actor along with the cab driver, Gonzales. The jury, as judges of the facts and credibility of the witnesses, chose to disbelieve appellant's theory of the case. We find the evidence sufficient to sustain appellant's conviction as an active participant to the burglary of the building. *Rodriguez v. State*, 417 S.W.2d 165 (Tex.Cr. App.1967); *See also Shivers v. State*, 460 S.W.2d 915 (Tex.Cr.App.1970). The second ground of error is overruled.

■ In his third ground of error, appellant asserts the trial court erred during the punishment phase of the trial by permitting the introduction of evidence, over objection, concerning prior criminal charges against appellant which had not resulted in final convictions. The complaint is premised upon an alleged violation of Tex.Code Crim. Pro.Ann. art. 37.07 § (3)(a) (Vernon 1980) which reads in pertinent part:

Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the State and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

At the punishment phase the State offered the testimony of four police officers who testified as to appellant's bad reputation for being peaceful and law abiding. In addition, the State offered, without objection, instruments disclosing two prior final misdemeanor theft convictions. Appellant then testified in his own behalf and on cross-examination admitted to the use of eight aliases in addition to admitting to final convictions involving eight separate instances. During the course of cross-examination the following transpired:

(Prosecutor) Q: Mr. Morrow, isn't it true in 1968 you were convicted in Indianapolis for carrying a concealed weapon?

Mr. Kosub (Defense Attorney): I object, Your Honor, it is not relevant to this particular proceeding.

Prosecutor: He has taken the stand, we have a right to proceed at this point.

The Court: The objection is overruled.

Mr. Kosub: Note my exception, Your Honor.

(Prosecutor) Q: Isn't it true, Mr. Morrow, that in 1968 you were convicted in Indianapolis for carrying a concealed weap-

on and received fourteen days in jail and nine days probation?

A: No, sir.

Q: You weren't convicted of that?

A: I wasn't.

Q: And you didn't serve jail time for that?

A: No. It is possible that you might have it mixed up with my father. I am a junior, and like I say we don't live together anymore. He is from there. I have no felony convictions.

Q: Mr. Morrow, isn't it true that November 24, 1975, you were convicted in municipal court for theft under five and received a ten dollar fine?

A: Yes, I did.

The Court: What was the date?

Mr. Peden: November 24, 1975, judge.

Q: Isn't it true that November 8, 1976, you were convicted of prostitution and received a $17.50 fine here in San Antonio?

A: For prostitution?

Q: That's correct.

A: No, I have never been convicted of prostitution.

Q: Well, what were you convicted of at that time?

A: I beg your pardon.

Q: What were you convicted of on that date?

A: I said that I wasn't convicted of prostitution.

Q: What were you convicted of on that date?

A: I don't know how it is worded. I am not no female impersonator.

It is apparent from the record that the general objection made at trial does not comport with the contention now urged on appeal. In the first place no evidence was offered of charges lodged *against appellant* that did not result in final convictions. The only objection made by appellant addressed the relevancy of a criminal charge *denied* by appellant and subsequently attributed to his father, who has the same name.[2] The only other criminal charge to which we are directed in the record involves a possible mislabelling of the offense. Since appellant did not object to questions touching upon this offense nor deny the fact of a final conviction, we presume he was sufficiently satisfied that the crime was merely mislabelled by the prosecutor. We hold the objection at trial to be too general to apprise the trial court of the nature of the complaint urged. *Smith v. State*, 513 S.W.2d 823 (Tex.Cr.App.1974).

■ Even if the objection was sufficiently preserved for review, in view of appellant's denial and explanation of the criminal charge made the basis of his complaint on appeal, together with evidence of an extensive criminal record, including eight admitted final convictions, we hold error, if any, to be harmless. *Williams v. State*, 493 S.W.2d 863 (Tex.Cr.App.1973); *Marks v. State*, 454 S.W.2d 749 (Tex.Cr.App.1970). *See also Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The third ground of error is overruled.

■ Appellant contends in his final ground of error that the trial court erred in failing to grant a mistrial following an incident in which appellant was allegedly paraded before the jurors in handcuffs. In order to fully understand appellant's contention we reproduce his entire argument:

It is the contention of the appellant under this ground of error that the trial court though duly notified of an objection to defendant being paraded in front of members of the jury in handcuffs, failed to grant a mistrial in this matter. Further, the court declined to have the record reflect that said objection was made although it was made in open court in front of the court reporter while court was in session. Though the appellant, convicted of the offense during the first phase of the trial was erroneously removed from the holding cell by bailiffs of the 226th Judicial District Court and allowed to pass in full view of the jurors

---

**2.** No contention is made that the prosecutor acted in bad faith nor does the record support such a finding. *See Alexander v. State*, 476 S.W.2d 10 (Tex.Cr.App.1972).

waiting for the beginning of the punishment phase of the appellant's trial, court refused and erred in refusing to declare a mistrial in the matter. The question presented above is one of first impression since all case law to date reflected the view of the jury of the defendant during the first phase of the bifurcated trial system. It is the contention of the appellant that a view of the jury of the defendant in handcuffs is prejudicial and inflammatory at any time, and for this reason appellant's conviction should be reversed.

The record is totally silent on this complained-of matter. No attempt was made to preserve the alleged error by motion for new trial nor by bill of exception. *See* Tex.Code Crim.Pro.Ann. arts. 40.03 (Vernon 1979), 36.20 (Vernon 1981) and 40.09(6) (Vernon Supp.1981).

This court cannot accept as fact allegations or assertions in an appellate brief which are not supported by the record. *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App. 1978); *Holcomb v. State*, 523 S.W.2d 661 (Tex.Cr.App.1975). We are presented with nothing to review and, accordingly, the ground of error is overruled.

There being no reversible error, the judgment is affirmed.